# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| SEAMUS LAGAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:19-cv-00050 |
| JOHN MARK WINDLE, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Representative John Mark Windle ("Rep. Windle"), a member of the Tennessee House of Representatives, has filed a Motion to Dismiss Plaintiff's Verified Amended Complaint (Doc. No. 27) for defamation and false light invasion of privacy. The Motion is ripe for decision (Doc. Nos. 28, 35, 37), and, for the following reasons, will be denied.

## I. FACTUAL ALLEGATIONS

The following allegations are taken from the Verified Amended Complaint (Doc. No. 17) and accepted as true to resolve the Motion.

Seamus Lagan is the Chief Executive Officer of Rennova Health, Inc. ("Rennova"), which owns the Jamestown Regional Medical Center, Inc. ("JRMC"), in Rep. Windle's district. Prior to JRMC closing, the Herald-Citizen newspaper published an article about its operations. The article quoted Rep. Windle who, among other things, called Lagan an "Irish gangster." (Id. ¶¶ 6, 11). Likewise, WATE Channel 6 published an article on its website about JRMC closing that quoted Rep. Windle as saying:

> Unfortunately *an Irish gangster* was allowed to buy the [JRMC]. Since that time, he has constantly cheated the employees and mismanaged the hospital to such degree that it's no longer viable. He didn't pay federal income tax withholding, he

> didn't pay unemployment compensation, as he's required to by both federal and state law. . . . *He's simply a thief and should be prosecuted.*

(Id. ¶ 14 (emphasis added)). Rep. Windle and another legislator also wrote to the Tennessee Department of Labor about Rennova's compliance with state laws. Contrary to Rep. Windle's comments, Lagan avers that he owns only a 1% interest in Rennova, is not part of JRMC's management, has no criminal history, and has never failed to pay his own taxes. Lagan alleges that Rep. Windle's statements were made when the Tennessee General Assembly was not in session and were not part of any legislative deliberation. (Id. ¶¶ 13, 29).

## II. LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), "the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs." Nwanguma v. Trump, 903 F.3d 604, 607 (6th Cir. 2018). To survive dismissal, the plaintiff must plead enough factual allegations that, accepted as true, state a claim to relief that is plausible on its face and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A claim has facial plausibility when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Dismissal is also appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law. Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir. 2007).

## III. ANALYSIS

### A. Defamation and False Light Invasion of Privacy

"To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing

2

to ascertain the truth of the statement." Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999). The tort of false light invasion of privacy requires: "(1) publicity, (2) that places the plaintiff in a false light, (3) that is highly offensive to a reasonable person, and (4) that the defendant knew of or acted with reckless disregard to the falsity of the publicized matter and the false light in which the other would be placed." Seaton v. TripAdvisor LLC, 728 F.3d 592, 601 (6th Cir. 2013) (applying Tennessee law)(internal quotation omitted)). On a motion to dismiss, depending upon the context, a "trial court may determine that a statement is not defamatory as a matter of law only when, . . . the statement is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense." Grant v. Commercial Appeal, No. W201500208COAR3CV, 2015 WL 5772524, at *10 (Tenn. Ct. App. Sept. 18, 2015) (internal quotations omitted).

Rep. Windle does not contest that Lagan has alleged the elements of defamation and false light invasion of privacy (Doc. No. 28), and the Court agrees. Rep. Windle instead argues that his comments were not capable of any defamatory meaning, as a matter of law, because they were "constitutionally protected opinions (or permissible hyperbole)." (Id. at 18). As the Sixth Circuit explained in Seaton, the First Amendment protects "statements that cannot reasonably be interpreted as stating actual facts about an individual." Seaton, 728 F.3d at 597 (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990). Such statements of opinions, about another's behavior, made in "loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining" them as fact are constitutionally protected. Id. (quoting Milkovich, 497 U.S. at 20-21). These legal principles were applied by the Middle Section Tennessee Court of Appeals in Kersey v. Wilson, 2006 WL 3952899 when it analyzed a series of defamation cases and then concluded:

> Interestingly, in all of the above cases, the language uttered by the defendants about the plaintiffs, could, if taken literally, impute to them the commission of a crime. However, the courts held in each of them that the use of the terms "highway robbery," "blackmail" and "traitor" were expressions of opinion as to the plaintiffs' behavior rather than accusations that they had committed actual crimes, and that those expressions were therefore protected speech.

No. M2005-02106-COA-R3CV, 2006 WL 3952899, at *5 (Tenn. Ct. App. Dec. 29, 2006).

When Rep. Windle referred to Lagan as an "Irish gangster" and "thief," he engaged in the classic type of "loose, figurative or hyperbolic" language protected by the First Amendment. Had Rep. Windle stopped there, dismissal would be proper. But, Rep. Windle went further and equated Lagan with JRMC and suggested they are one. Based on reasons that will surely be explored in discovery, Rep. Windle asserted that Lagan owns and controls JRMC, that Lagan cheated JRMC employees, that Lagan mismanaged JRMC by not paying its taxes or employee benefits, all of which caused the closure of JRMC. For now, it is Lagan's averments that control the Court's analysis and he avers that he was not part of the hospital's management team and was only a mere 1% stock owner. Maybe Rep. Windle will be proven right when the facts he relied upon are disclosed, but for now at this preliminary stage, the Court must take as true that Lagan is not JRMC and JRMC is not Lagan. As a result, dismissal is not legally required.

**B. Legislative Immunity**

Rep. Windle also argues that he is entitled to dismissal based upon legislative immunity. (Doc. No. 28 at 9–12). He argues that his comments were in response to "numerous calls from constituents" about JRMC's closure, to show he was speaking as a legislator. (Doc. No. 28 at 10–11). This maybe the case, but here the Court relies on the factual averments by Lagan that Rep. Windle's comments were in no way connected to any legislative function. (Complaint ¶¶ 26-31).

4

Indeed, Rep. Windle is entitled to legislative immunity for comments made as part of the legislative function. Issa v. Benson, 420 S.W.3d 23, 26 (Tenn. Ct. App. 2013), which encourages the unencumbered exercise of legislative speech and debate. Miller v. Wyatt, 457 S.W.3d 405, 409 (Tenn. Ct. App. 2014). But, legislative immunity is not all encompassing. Id. at 410. It applies only to remarks relating to the official's "legitimate legislative function," Issa, 420 S.W.3d at 426, 428, which depends on the nature and scope of the statement. Id. at 428; see Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998).

Lagan has alleged facts that plausibly suggest Rep. Windle was not acting in his legislative capacity. The Verified Amended Complaint alleges that Rep. Windle's comments were made directly to the press outside of the legislative process. In other words, Lagan plausibly pleads that Rep. Windle's comments had nothing to do with the deliberative legislative process. Construing the Verified Amended Complaint in the light most favorable to Lagan, as required, Rep. Windle's motion to dismiss must be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE